12880

BOLT v. LIFE & CASUALTY INS. CO. OF TENNESSEE

(152 S. E., 766)

*Messrs. Watkins & Prince,* for appellant,

*Mr. Samuel M. Wolfe,* for respondent,

April 3, 1930.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The order of Judge Dennis is satisfactory to this Court. Let it be reported. The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE BLEASE (concurring) : I do not think "the sole point in the case is whether a motorcycle is a motor-driven car within the terms of the policy," as suggested by Mr. Justice Cothran. That question, however, is an important one, and it seems to be entirely new in this State. In considering it, however, there are some principles of law, well recognized by our Court, which we must keep in mind.

In *Rawl v. Insurance Co.,* 94 S. C., 299, 77 S. E., 1013, 1014, 44 L. R. A. (N. S.), 463, Ann. Cas., 1915-A, 1231, Mr. Justice Woods, referring to the construction of an insurance policy, cited several of our cases to sustain this proposition:

"If the meaning is doubtful, or the language is calculated to mislead, the Courts will adopt the meaning most favorable to the maintaining of the liability."

This Court has also decided, "where insurer writes a policy of life insurance, it should be read most strongly against it." (Syllabus) *McKendree v. Life Insurance Co.,* 112 S. C., 335, 99 S. E., 806.

Undoubtedly, many of the authorities cited by Mr. Justice Cothran sustain very strongly his position that a motorcycle is not included in the term "motor-driven car." The authorities are from Courts that are highly respected for their wisdom and learning. They are not in accord with my view, however, and this Court is not bound by them. I think, perhaps, the Courts that decided the cases, cited in the dissenting opinion, have not been as strong as our own Court has been in resolving doubtful matters regarding insurance policies in favor of the insured persons and the beneficiaries of such policies. An examination of many of our decisions, too numerous to even refer to here, will disclose that our Court has made it the almost unversal rule to construe any

clause of an insurance policy against the insurer, when there existed the least doubt as to the meaning of the language employed. The two South Carolina cases, above referred to, are indications of the holdings of this Court.

Some authorities I have found in my investigation of this case strengthen my view of the incorrectness of the holdings in the decisions cited in the dissenting opinion.

The term "motor-driven car" is made up of two words, motor-driven and car. In Webster's New International Dictionary, the meaning of "motor-driven" is given as, "Driven or actuated by a motor." The important word in the expression "motor-driven car" is "car." In the same dictionary, that word is given numerous definitions. The very first of these, however, is this, "A vehicle moved on wheels." Since the definition named was first given, I suppose the author deemed it to be the most appropriate. As I understand it, then, according to Webster, a "motor-driven car" is, "a vehicle moved on wheels by a motor." It is not said in Webster how many wheels the vehicle must have to constitute it a car, but it must have *wheels*—more than just one wheel. Two wheels will meet the requirement. A motorcycle has two wheels; so that machine or vehicle comes within the definition laid down by Webster of the word "car."

Since a motorcycle, as per Webster, is a "car," and it is driven by a motor, it follows, necessarily, that a motorcycle is a "motor-driven car."

I find also, in the same dictionary, the word "motor-car" defined as follows: "An automobile, locomobile, or locomotive designed to run and be steered on a street or roadway; esp., an automobile specially designed for passengers. See automobile. In British statutory classification a *motor car* is included under the term *light locomotive* (which see). In the Motor Car Act (3 Ed. VII, c. 36), the term *motor car* includes also *motor cycle* except where the contrary intention appears. See motor cycle."

Webster defines motorcycle thus: "A bicycle having a motor attached so as to be self-propelled. In Great Britain the term *motor cycle* is treated by statute (3 Ed. VII, c. 36), as limited to motor cars (self-propelled vehicles) designed to travel on not more than three wheels; and weighing unladen (that is, without water, fuel, or accumulators necessary for propulsion) not more than three hundred weight (336 lbs.), see motor car."

It will be observed that in the definitions above quoted, in defining motor car, Webster says, "see motor cycle." In defining motorcycle, he says, "See motor car." Evidently, the authors of that great dictionary regarded motorcycle and motor car as practically synonymous.

It is to be noted also that in the statutory enactments of England, according to Webster, motorcycle has been held to be included in the term motor car.

Webster is corroborated in this by a note in 21 L. R. A. (N. S.), 41, where we find the following:

"And, in *R. v. Divisional Justices* (1904) 2 Ir. K. B., 698, the conviction of the rider of a motor cycle was sustained as a violation of an act punishing the driving of 'a motor car on a public highway, recklessly or negligently,' at a prohibited speed."

The holding in the case last mentioned was questioned in *Laporte v. Insurance Co.*, 161 La., 933, 109 So., 767, 48 A. L. R., 1086, cited by Mr. Justice Cothran, but the author of the annotation in 48 A. L. R., 1090, says that the Court in *Rex v. Divisional Justices* assumed that a motorcycle was a "motor car" within the meaning of the act.

According to the author of the same annotation in 48 A. L. R. in the English case of *Webster v. Terry*, 1 K. B., 51, it was held that a motorcycle was included in the provisions of an act containing conditions to be observed by persons using motor cars on the highways.

The decisions of the English Courts, like those of other jurisdictions in this country, are not binding upon this Court,

but they are entitled to great respect. There, it will be observed that even in the construction of a penal statute, where the rule is that the language of a statute must be construed in favor of one charged with crime, when there is doubt as to the meaning of the language used, it was held that motorcycle was included in the term motor car.

I fear that the Courts of some of our American states, whose decisions have been cited in the dissenting opinion, have fallen into error in not following the decisions of the English Court, and that they have paid entirely too little attention to that good old American authority as to the meaning of English words, Webster's Dictionary.

Now turning to American legal authorities, we find in Ruling Case Law this statement:

"The Courts without making clear distinctions, have generally used the terms automobile, motor vehicle, motor car, and in the earlier cases, horseless carriage, as being synonymous with each other. Except where special provision is made to the contrary, *a motor cycle is considered as falling within statutes which use such terms.* * * *" (Emphasis added.) 2 R. C. L., 1167.

According to that authority, when there is no special provision to the contrary, a motorcycle falls within the term motor car.

Upon the authority of one of the cases cited by Mr. Justice Cothran, *Laporte v. Insurance Co., supra,* Corpus Juris has said: "A motor cycle is not a 'motor car' in the general and popular sense of that word," but I regard the statement there as an exception to the general rule laid down in that valuable textbook. We find, upon further examination, that Corpus Juris, in discussing "Motor Car," has this to say (42 C. J., 611):

"A 'motor car' has been defined as a self-moving vehicle; a vehicle propelled by mechanical power; a vehicle which is guided and controlled by a person riding upon or in it, is designed and intended to carry one or more persons, and is

propelled by power, not supplied from any source external to itself, but which is for the time being stored or generated within it."

It is readily seen that a motorcycle comes clearly within the three given definitions of "motor car."

Mr. Berry, in his valuable little work, "Law of Automobiles" (page 3), gives this general definition of "motor car":

"A car which carries its own propelling mechanism, as an electric motor, pneumatic engine, steam engine, etc., and is therefore a locomotive. Many such cars have sufficient power to draw other cars attached to them."

He says also (page 3) that, "The automobile is variously referred to as auto, autocar, car, machine, motor, motor car, and other terms equally as common, but neither complimentary nor endearing." And he states (page 5) "Unless expressly excluded, the motor-cycle falls within the definition of the automobile as the term has been used by the various state legislatures, and also within the general definition as heretofore given." Mr. Berry goes farther than is even necessary to sustain my conclusion that motorcycle is without doubt included in the term "motor-driven car."

But if it should be held that I am in error as to my conclusion on the main point involved in the case, there are other reasons entirely sufficient to require an affirmance of the judgment of the lower Court. Giving the appellant the benefit of the possible assumption that the contract may not on its face show a clear intention to include a motorcycle in the term "motor-driven car," the question then arises as to the ambiguity contained in the instrument.

Mr. M. A. Lindley, the agent of the appellant at the time the policy was issued to the insured, and who delivered it to him, testified that it was his understanding that the policy covered accidents occurring while an insured was riding on a motorcycle; that he so represented this class of policy to persons with whom the company dealt including the insured, as covering such accidents, and that the superintendent of

the company, under whom the witness worked, had the same understanding and made similar representations. There was no denial on the part of the appellant as to the truth of the statements of the witness. It was shown by the respondent also that the insured, in his work with the Southern Bell Telephone Company, was required to ride a motorcycle, and this evidence was not disputed by the appellant. There is nothing in the record to show that the insured owned an automobile, or that in his work he was required to drive or ride in one.

In the recent case of *Cato v. Railroad Co.,* 152 S. E., 522, we cited with approval several holdings from former decisions of this Court as to ambiguous contracts. The authorities are clear, as will be seen from the citations in the *Cato case,* that: (1) Parol evidence is admissible to explain the signification of words according to the usage of those accustomed to make contracts of the kind in issue where the meaning is not plain; (2) where the construction of the language of the contract, considered alone, is doubtful, it is the Court's duty to inform itself of the surrounding circumstances and to consider the preliminary negotiations, so that the language employed may be given the intended effect; and (3) it is a familiar canon of construction that, if the contract is doubtful in meaning, the Court may look into the construction which the parties themselves have placed on it, to reach the true intention, which is the object of all judicial interpretations.

The evidence to which I have referred convinces me that the insured desired a policy which would protect him from an accident occurring while he was riding on a motorcycle; that he thought he was getting the kind of insurance he desired; and that the company, through its duly authorized agent, sought at the time to comply with the desire of the insured, and contracted with him accordingly. The prior holdings of this Court, to which attention has been called,

sustain the admission of the evidence, and support the conclusion reached by the Circuit Judge.

In the trial of this case, an action at law, Judge Dennis sat as both Judge and jury, under the agreement of the parties. He has found that "motorcycle" in this contract was included in the term "motor-driven car." If his finding was simply one of law, and his conclusion was erroneous, we could upset it. However, I agree with that legal conclusion. If his finding was one of fact, and I am inclined to think it was, the evidence fully sustained it, and we have no right to disturb his finding.

While there is some difference in the language of the clause under consideration and the coverage as to a pedestrain, I do not attach the significance to it that Mr. Justice Cothran finds. A careful examination of the two paragraphs, setting forth the coverage of the policy, serves to make me believe that the intention of the entire instrument is to somewhat mislead the unwary. A hasty reading of the language, especially by one not well acquainted with insurance policies, is likely to leave the impression upon the mind of the reader that one is being insured against many casualties or accidents which the policy does not cover at all. To demonstrate some of the misleading things contained in the instrument, in one place it refers to "a vehicle propelled by * * * horse * * * power," and in another place it refers to a "horse-drawn vehicle." It is easy to conceive that in defending from liability, on account of an accident occasioned by a horse and vehicle, the insurer may claim that the vehicle was not drawn by the horse, but was "propelled" by it. While in some other instances, the insurer may object to paying out its money because the vehicle was drawn and not propelled by the horse, for there is some distinction between the meaning of the words "drawn" and "propelled."

To support the contention of the appellant as to the point it makes in the case, it has been said that one does not, and cannot, ride "*in* a motorcycle," but that his riding must be

*on* the machine. To me that is a distinction without any real difference. The driver of a motorcycle sits in the seat. The seat is a part of the vehicle or *car*. When the rider is in the seat, he is in a part of the car. When he is in a part of the car, he is in the car. The same argument so advanced would likely apply also to one who rides in a "stripped down Ford." In the latter class of vehicle, the rider is on the seat, and appears to be on the whole machine, just as much as the rider in the seat of a motorcycle appears to be on that vehicle. Some motorcycles carry a side car and convey two persons, the driver in the seat of the machine, and the other person in the side car. According to the claim made as to the distinction between "in" and "on," it would appear that the driver of the motorcycle would be *on* the machine, and the passenger would be *in* it.

Unfortunately for the insurance business, many companies engaged in that business seek to evade in various ways the decisions of the Courts. In the conduct of their business, they have a wonderful advantage over the average citizen who seeks to protect himself and family by insurance. Our Court has recognized oftentimes the great disadvantage which our people have in dealing with many insurance companies, and it has rightly been the policy of the Court to protect, when justice allows and demands it, the holders of insurance policies and their beneficiaries. I dare to observe that in a policy of the class of the one involved in this case that the term "motor-driven car" has been changed, or will be changed soon, to the word "automobile," or some other word, on account of the claim of the respondent that the policy here covered an accident sustained from a motorcycle.

Mr. Justice Gage, from that great just heart of his, said *in Wingo v. Insurance Co.,* 155 S. C., 206, 101 S. E., 653, 656:

"When a contract has been executed, and to be performed after the death of one of the makers of it, and when that maker of it is dead, the contract ought not to be annulled by

the other maker, except upon a breach of the letter of the agreement."

I venture the suggestion that not only the letter but the spirit of an insurance policy should be faithfully regarded by the insurer. Both the letter and the spirit of this policy demand that the appellant pay to the father of the young man, who was killed in a motorcycle accident, the full amount of the insurance. So I concur in the opinion of the Chief Justice.

Mr. Justice Stabler concurs.

Mr. Justice Cothran (dissenting) : The plaintiff is the beneficiary in a policy of insurance issued by the defendant to Charles H. Bolt, a son of the plaintiff, insuring him in the sum of $1,000 against loss of life, limb, or sight by accidental means. The insured, while riding on a motorcycle, collided with an automobile and was killed.

The condition upon which the insurance company was liable under the policy was that he be injured "by the collision of or by an accident to any private horse-drawn vehicle or motor-driven car in which insured is riding or driving."

The sole point in the case is whether a motorcycle is a motor-driven car within the terms of the policy.

The case was tried before his Honor Judge Dennis and a jury, and at the conclusion of all of the testimony, upon motion of plaintiff's attorney, his Honor directed a verdict in favor of the plaintiff for the amount of the policy, and from the judgment entered thereon the defendant company has appealed.

It appears that, upon the conclusion of the testimony, and after the motion for a directed verdict had been argued, his Honor took the motion under consideration upon agreement with counsel that the jury might be discharged, and that any judgment rendered by his Honor would have the same effect as if the verdict had been actually signed by the jury.

Later, his Honor, on March 12, 1929, signed an order holding that the policy which referred to a "motor-driven

car in which insured is riding or driving" included a motor-cycle.

I have been able to find, upon a thorough search of the authorities, only the following cases which bear directly upon the question at issue. *Salo v. Ins. Co.,* 257 Mass., 303, 153 N. E., 557, 558; *Laporte v. Ins. Co.,* 161 La., 933, 109 So., 767, 768, 48 A. L. R., 1086; *Perry v. Ins. Co.,* 104 N. J. Law, 117, 138 A., 894, 895; *Silverstein v. Ins. Co.,* 237 N. Y., 391, 143 N. E., 231, 35 A. L. R., 32; *Colyer v. Ins. Co.,* 132 Misc. Rep., 701, 230 N. Y. S., 473; *Anderson v. Ins. Co.,* 197 N. C., 72, 147 S. E., 693, 694.

The precise question at issue was decided in each one of the above-stated cases in favor of the present contention of the insurance company that the descriptive term "motor-driven car" did not cover a motorcycle. I have found not one reaching a contrary conclusion.

In *Laporte v. Ins. Co., supra,* the Court said:

"Because of the unusual risk assumed by those riding upon motorcycles, it is plain that these machines were excluded intentionally from the policy, not in express terms, it is true, but by restricting recovery only to cases of accidents to the insured arising by being thrown from 'any private *horse-driven vehicle, or motor-driven car, in which such insured is riding or driving,'* thereby clearly indicating a motor-driven car with a body, and having more than two wheels as a support, and as a protection to the driver against accidents.

"So there is every reason, from the standpoint of risk and liability, why defendant insurance company should exclude motorcycles from its policy, and none whatever to induce it to include such dangerous machines, upon the payment of the negligible sum of 50 cents per year for an indemnity risk of $1,000. A motorcyclist may ride *upon* his machine, but he cannot ride *in* it. A motorcycle is not known as a 'motor-driven car,' or as a 'motorcar,' in the general and popular sense of that term. It would be difficult to conceive

that a garage owner would send a motorcycle to a customer to ride in when he had ordered a 'motor*car*.' It would be more difficult to conceive that such customer would accept such a machine as a 'motorcar' if sent. A policy of insurance is a contract between the parties and is the special law of the case as far as they are concerned."

In *Perry v. Ins. Co., supra,* the Court said:

"Our examination of the provision of the policy sued on bearing on the present controversy has led us to the conclusion that the correct interpretation of the terms of the policy excludes a motorcycle from the class of a motor-driven car. There is no ambiguity in the language of the policy. The principle of law that when an ambiguity exists the policy should be liberally construed against the company and in favor of the insured has no application. The ordinary and usual meaning of the words must be sought and given to them. Where the words are used to express the meaning of the party using them, the Court will not adopt a strained and improbable construction. *Bew v. Travelers' Insurance Co.,* 95 N. J. Law, 533, 112 A., 859, 14 A. L. R., 983. The policy uses the phrases 'horse-drawn vehicles' and 'motor-driven cars.' A motorcycle is a vehicle. If motorcycles were intended to be included, the draftsman of the policy would have used the words 'motor-driven vehicles.' After using the word 'vehicle' in the phrase 'horse-drawn vehicles,' it would seem that the use of the phrase 'motor-driven car' immediately afterward is significant and indicates a purpose to exclude such a vehicle as a motorcycle from the provisions of the policy. One riding on a motorcycle is more exposed to accidents than one riding in a motor-driven car. A car stands upright on four wheels whether in operation or stopped. It is protected by bumpers in front and rear. It has a body in which the passengers sit which protects them in some measure from the perils of the highway. One riding on a motorcycle cannot keep it in equilibrium when not in operation. When stopped he must get off or place his feet,

or one foot, upon the ground. A motorcycle has no front or rear protection in the form of fenders or bumpers. It has no body for the protection of the rider. A rider is therefore more exposed to the dangers incident to congested traffic. For these reasons, which make the risk of riding on a motorcycle greater than that of riding in a motor-driven car, we think the rider on a motorcycle was intentionally excluded from the provisions of the policy by the use of the language employed.

"The use of the preposition 'in,' in the clause of the policy reading 'or motor-driven car in which insured is riding or driving,' is also significant. One riding on a motorcycle is not referred to as riding 'in' a motorcycle, but 'on' a motorcycle. A passenger or one driving a car is not usually referred to as riding 'on' a car but 'in' a car. Where a policy uses the words 'or motor-driven car in which the insured is riding or driving,' it is for the purpose of limiting the insurer's liability. The reason is the one we have indicated, the greater safety of the insured 'in' a car. This distinction has been recognized in a number of cases."

In *Colyer v. Ins. Co.*, 132 Misc. Rep., 701, 230 N. Y. S., 473, it was held that a motorcycle was not an "automobile" within the terms of an accident insurance policy.

In *Anderson v. Ins. Co., supra,* it was held that a motorcycle was not a "motor-driven car" within the terms of a travel and pedestrian policy insuring against injuries sustained by insured by collision of or accident to a "motor-driver car in which insured is riding or driving." (The defendant in that case was the same as in this and the policy identical.) The Court followed the *Laporte, Perry,* and *Salo cases, supra,* saying:

"There is nothing in our law which is inconsistent with the cited authorities, and we see no reason why they should not be regarded as conclusive on the question here presented."

The strength of the *Salo case, supra,* may be somewhat weakened by the fact that the statute defines an automobile as "any motor vehicle except a motorcycle"; but the following quotation from the case shows that the ruling would have been the same without the definition:

"It is apparent from the language of the statute last quoted that the term 'motor vehicle' includes both automobiles and motorcycles. While every motorcycle is a motor vehicle, it is plain that every motor vehicle is not a motorcycle. The statute makes a clear distinction between an automobile (which manifestly is a 'motor-driven car' as used in the policy) and a motorcycle. The word 'car' is ordinarily used in speaking of an automobile. It is a common expression describing an automobile. It is a matter of common knowledge that in ordinary conversation a motorcycle is not referred to as a car, but is spoken of as a motorcycle. The difference in the mechanical construction of automobiles and motorcycles does not indicate that a common designation would naturally apply to both. A motorcycle having ordinarily two wheels is a machine more in the nature of a bicycle equipped with motor power. The statutory definitions above referred to make it apparent that there is a distinction between an automobile and a motorcycle. The term 'motor-driven car,' as used in the policy, while applicable to an automobile is not appropriate to describe a motorcycle."

It is significant that in the policy covering injury to a pedestrian the coverage is more ample. "If the insured be struck or run over while walking or standing on a public road by a *vehicle* propelled by steam, cable, electricity, etc.," which of course would include a motorcycle; but when provision is made for a collision, the term is not near so broad.

I think, therefore. that the judgment appealed from should be reversed.