**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0974-19T2

RICHARD G. BREBNER and
ROSEANN BREBNER,

      Plaintiffs-Appellants,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,[1]

      Defendant-Respondent,

and

JENNIFER KOLASINSKI,
claims manager,

      Defendant.

_____

Submitted January 6, 2021 – Decided January 21, 2021

Before Judges Whipple, Rose, and Firko.

---

[1] Improperly pled as Government Employees Insurance Company, General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, a/t/a/d/b/a GEICO.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1550-18.

John F.X. Fenerty, Jr., attorney for appellant.

Margolis Edelstein, attorneys for respondent (Colleen M. Ready, of counsel and on the brief; Ian Mark Sirota, on the brief).

PER CURIAM

In this insurance coverage dispute, plaintiff Richard G. Brebner[2] was insured by defendant Government Employees Insurance Company (GEICO) under a New Jersey Family Automobile Insurance Policy that included underinsured motorist (UIM) coverage. On August 19, 2015, plaintiff was injured while driving home from work in his employer's 2009 Kia Rondo automobile, and claimed his injuries exceeded the $25,000 bodily injury policy limits tendered by the tortfeasor's insurance carrier. Plaintiff filed a claim under his UIM coverage, which GEICO denied based on the policy's "regular use" exclusion. Plaintiff's ensuing complaint seeking coverage from GEICO was dismissed by the Law Division on the parties' cross-motions for summary judgment.

---

[2] We refer to Richard G. Brebner as plaintiff, although we recognize Roseann Brebner, his wife, has filed a derivative claim for loss of consortium.

A-0974-19T2

Plaintiff now appeals from the motion judge's September 27, 2019 order.[3] Acknowledging the essential facts are undisputed, plaintiff raises a single legal issue for our consideration, contending the judge erred because plaintiff was not "regularly using" the Kia at the time of the accident. Having conducted a de novo review of the record, we affirm.

Plaintiff was employed as a supervisor for a company that provided ultrasound services. He was permitted to drive the Kia during the course of his self-described "24/7" employment, which required frequent driving between the company's two offices, various client jobsites, and the airport when necessary. Plaintiff drove the Kia at least five days per week, including some weekends, but he was not permitted personal use of the car. Plaintiff's employer monitored his travel via tracking software installed in the Kia.

As reflected in the declarations page of the GEICO policy, plaintiff and his wife were named insureds; their cars – a 2009 Saturn Outlook and a 2014 Hyundai Sonata – were covered vehicles. Under the "LOSSES WE WILL PAY" subsection of the "UNINSURED/UNDERINSURED MOTORISTS

---

[3] The order provided on appeal only includes the judge's decision granting defendant's summary judgment motion, but the record reveals plaintiff filed a cross-motion for summary judgment, seeking coverage under the GEICO policy. In addition, the parties have not provided any information concerning Jennifer Kolasinski's disposition before the trial court; she is not a party to this appeal.

COVERAGE" section of the policy, GEICO agreed to pay "damages for bodily injury . . . caused by an accident which the insured is legally entitled to recover from the owner or operator of an . . . underinsured motor vehicle arising out of the . . . use of that vehicle." An underinsured motor vehicle is defined in the policy as "a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage."

GEICO did not dispute the tortfeasor's vehicle was underinsured. Instead, GEICO denied coverage under exclusion six: "[B]odily injury sustained by an insured while occupying a motor vehicle not owned by, and furnished for the regular use of the insured when involved in an accident with an underinsured motor vehicle." Plaintiff countered he was not using the Kia for regular use because he was not permitted to occupy the car outside the scope of his employment, and he drove the Saturn Outlook as his personal vehicle.

We review a trial court's order granting or denying summary judgment under the same standard employed by the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Because the interpretation of an insurance contract is a question of law, our review is de novo. Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super.

4

241, 260 (App. Div. 2008); see also Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (recognizing appellate courts review summary judgment motions de novo, and accord no deference to the judge's conclusions on issues of law).

Generally, New Jersey courts apply a "canon of liberal construction . . . to effect the broadest range of protection to those who travel on and across roadways." French v. Hernandez, 184 N.J. 144, 154 (2005) (internal quotation marks omitted). Insurance policies are considered "contracts of adhesion," and as such, are "construed liberally in [the insured's] favor" to provide coverage "to the full extent that any fair interpretation will allow." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990) (alteration in original) (citing Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)). Thus, it follows that coverage clauses should be interpreted liberally, while exclusionary provisions should be strictly construed. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 429 (App. Div. 2004); see also Gibson v. Callaghan, 158 N.J. 662, 671 (1999).

The burden is on the insurer to demonstrate the claim falls within the purview of the exclusion. Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998). However, exclusionary provisions are presumptively valid if they are "specific, plain, clear, prominent, and not contrary to public policy." Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 46 (App. Div. 2010) (citing

<u>Princeton Ins. Co. v. Chunmuang</u>, 151 N.J. 80, 95 (1997)). Accordingly, "[i]f the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." <u>President v. Jenkins</u>, 180 N.J. 550, 562 (2004).

On appeal, plaintiff reprises the arguments he raised before the motion judge, contending our Supreme Court's decisions in <u>DiOrio v. New Jersey Manufacturers Insurance Co., Inc.</u>, 63 N.J. 597 (1973) (<u>DiOrio I</u>) and <u>DiOrio v. New Jersey Manufacturers Insurance Co., Inc.</u>, 79 N.J. 257 (1979) (<u>DiOrio II</u>), support his argument. Plaintiff argues the judge instead erroneously relied on our decision in <u>Fiscor v. Atlantic County Board of Chosen Freeholders</u>, 293 N.J. Super. 19 (App. Div. 1996). We disagree and conclude the judge's decision was consistent with existing precedent.

In <u>DiOrio I</u>, our Supreme Court noted with respect to liability coverage "[t]he word 'furnished' connotes much more than permission to use." 63 N.J. at 603. The term "connotes some general right to use, something more than use with permission on occasions, whether recurring or isolated." In <u>DiOrio I</u>, the operator of a company-owned vehicle was the son of one of the owners at the time of the accident. <u>Id.</u> at 605. But the son's use was "wholly occasional and depended on the father's permission . . . ." <u>Ibid.</u> The car therefore was not

A-0974-19T2

furnished for the son's regular use.  Ibid.  The Court remanded for resolution of two issues:  whether the father regularly used the vehicle, and whether the father's regular use of the vehicle triggered the "regular use" coverage exclusion. Id. at 607-08.

Following remand, the matter returned to the Supreme Court on the same two questions.  DiOrio II, 79 N.J. at 261-62.  Because there were no restrictions as to "how and why and when" the father could use the vehicle, the Court found ample support that the company-owned car was furnished to the father for his "regular use" within the meaning of the policy, which precluded coverage.  Id. at 269-70.

Other cases interpreting the meaning of the term underscore that "regular use" is not limited to situations in which the vehicle is used both for business and personal uses, or based on the frequency of use.  In Venters v. Selected Risks Insurance Co., 120 N.J. Super. 549 (App. Div. 1972), we rejected the motion judge's summary judgment determination that the plaintiff bus driver was not furnished a bus for "regular use" where the plaintiff did not drive the same bus every day.  We found it did not matter whether a specific bus – or various buses – were assigned to the plaintiff.  Id. at 552.  The bus was furnished by his employer for the plaintiff's regular use.  Ibid.

7

Twenty-two years later, we decided <u>Malouf v. Aetna Casualty & Surety Company</u>, 275 N.J. Super. 23 (App. Div. 1994), which was cited by the motion judge in the present matter. In <u>Malouf</u>, we held the frequency of the vehicle's use was not the central issue. "The question [wa]s not whether [the plaintiff] frequently used the vehicle but whether it was 'furnished' for his regular use." <u>Ibid.</u> (citation omitted).

Two years later, we decided <u>Fiscor</u>, 293 N.J. Super. 19, which the motion judge primarily relied upon to support his decision in the present matter. In <u>Fiscor</u>, we affirmed the denial of coverage when the warden of a jail, who was on call twenty-four hours a day, had an accident while intoxicated in a county-owned vehicle he was permitted to drive for work, and to and from his home. Id. at 21-22. We held, "[w]here the insured, as in the present case, <u>has an unrestricted right to use the vehicle for business purposes and was using the vehicle for such purposes at the time of the accident, the vehicle is one that is furnished for his regular use.</u>" <u>Id.</u> at 27-28 (emphasis added).

We are satisfied from our review of these cases that the exclusion applied here. It was undisputed that plaintiff's employer furnished the Kia for plaintiff's use during plaintiff's work hours, and that use was not restricted for business purposes. Indeed, plaintiff had a general right to use the Kia while working,

A-0974-19T2

when needed, twenty-four hours per day, including weekends.  The Kia was used daily, not occasionally.  Notably, the accident occurred while plaintiff was using the car while driving home from work.  These are precisely the characteristics other courts have recognized that constitute the furnishing of a vehicle for the "regular use" of the insured.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0974-19T2